UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

ERNIE LEEN CAMPBELL #82640      CIVIL ACTION NO. 23-cv-1624

VERSUS      JUDGE EDWARDS

JONATHAN CLARK ET AL      MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Ernie L. Campbell ("Plaintiff") is a self-represented inmate housed at the Caddo Correctional Center ("CCC"). He filed this civil rights action against three corrections officers, the Caddo Parish Commission, and the Police Jury of Caddo Parish. Plaintiff complains that he was subjected to excessive force and that unsanitary conditions caused him to contract cellulitis on his feet.

Before the court is a Motion for Summary Judgment (Doc. 17) filed by Caddo Deputies Jonathan Clark, Leroy Turner, and Shonderricka Jackson. The motion was noticed for briefing, and Plaintiff was granted a requested extension of time to oppose the motion, but he filed no opposition. For the reasons that follow, it is recommended that the motion be granted and that all federal claims against the three movants be dismissed. It is further recommended that the court decline to exercise supplemental jurisdiction over the state law claims asserted against the movants as well as the Parish of Caddo defendants and dismiss all such claims without prejudice.

**Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

**Excessive Force Claims**

Plaintiff alleged in his unverified complaint that he was taking a shower when Deputy Shonderricka Jackson entered the housing area and began speaking. Plaintiff alleged that he peered over the shower door to determine whether she was speaking to him when, without warning, Deputy Jonathan Clark "opened the shower door and shot [Plaintiff] with a taser gun." Plaintiff allegedly fell, struck his head on the concrete floor, and suffered a golf ball sized knot on the forehead; bruises on the hip, arms, wrist, and back; and a large purple contusion on his face. Plaintiff contends that he told the deputies that he was going to file a grievance, at which time Deputy Clark and Deputy Leroy Turner began assaulting and dragging Plaintiff to a lockdown cell.

The movants offer uncontested, competent summary judgment evidence that challenges the allegations in the complaint. Deputy Jackson states in a declaration made

pursuant to 28 U.S.C. § 1746[1] that she was working when she saw Plaintiff staring at her over the shower door. She told Plaintiff to step away from the front of the shower, but he refused. Jackson then instructed Plaintiff to leave the shower and return to his cell, but Plaintiff then moved to the back of the shower and refused to respond to her several commands that he return to his cell.

Deputy Jackson states that she told Plaintiff that she would call in a report of disobeying orders from staff, but Plaintiff continued to disobey orders. Jackson called the Emergency Response Team (ERT), and Plaintiff did not respond to their orders.

Deputy Jonathan Clark states in his Section 1746 declaration that he was a member of the ERT that responded to the call. A video (no audio) submitted with the motion depicts two ERT officers running to the area and approaching the shower. Clark states that, as they approached the shower, he gave Plaintiff orders to get on the ground. Plaintiff did not obey, but he opened the shower door and faced the deputies, still refusing orders to get on the ground. Clark states that Campbell was physically larger than him, which is evidenced by the video, and Clark deployed his Taser to gain compliance and for officer safety. Plaintiff then became compliant, he was placed in handcuffs, and he was escorted to the Medical Unit for evaluation and to have the Taser probes removed. Medical staff did their job, and Plaintiff made no complaints of any injuries while in the Medical Unit. He was then returned to his cell; he was not placed in lockdown.

---

[1] Hart v. Hairston, 343 F.3d 762 n. 1 (5th Cir. 2003) (facts sworn to under 28 U.S.C. § 1746 have been recognized as competent summary judgment evidence).

Deputy Leroy Turner, Jr., who is a named defendant, states in his Section 1746 declaration that he was not present in the housing unit at the time Deputy Clark responded to the refusal call. Turner adds that he does not appear on the video, and he had no contact with Plaintiff during the incident.

The moving defendants indicate that Plaintiff was a pretrial detainee at the relevant times, so his claims are governed by the Due Process Clause rather than the Eighth Amendment that applies to claims by convicted prisoners. "[A] pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 135 S.Ct. 2466, 2473 (2015). Objective reasonableness turns on the facts and circumstances of each particular case, and a court must make the determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight. Id.

A non-exclusive list of factors that may bear on the reasonableness or unreasonableness of the force used include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Id.

The movants satisfied their initial responsibility of informing the court of the basis for their motion and identifying those parts of the record that they believe demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). Accordingly, the burden then fell upon Plaintiff to demonstrate the existence of a

genuine dispute of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986). Plaintiff was given a reasonable opportunity to oppose the motion, but he filed nothing.

The uncontested summary judgment evidence presented by the movants depicts a use of force that was not objectively unreasonable under the circumstances. Plaintiff was given multiple orders by two different deputies, and he could have easily complied by stepping back from the shower door or (later) simply walking to his cell. Plaintiff instead chose to force the issue by his repeated defiance of orders. The use of a Taser was not unreasonable under the circumstances, which included the size disparity between the deputy and the inmate. There is no evidence that Plaintiff suffered any significant injury other than the shock of the Taser, and the video shows him easily walking with the ERT members on the way to the Medical Unit. The movants are entitled to summary judgment on the excessive force claims.

**Failure to Intervene**

Plaintiff alleged on page seven of his complaint that Deputies Jackson and Turner failed to intervene and restrain Deputy Clark from using excessive force against him. Bystander liability of an officer may be established where he "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Kitchen v. Dallas County, 759 F.3d 468, 480 (5th Cir. 2014). But bystander liability can arise only where the plaintiff can prove another officer used excessive force. Id. at 481.

As discussed above, Clark is entitled to summary judgment on the excessive force claim.  There is therefore no basis to find Jackson or Turner liable for failure to intervene in the event.  Furthermore, Deputy Turner testified that he was not even present in the housing unit at the time Deputy Clark responded to the call.  All movants are entitled to summary judgment on the Section 1983 claim of failure to intervene or bystander liability.

**Cellulitis Claim**

Plaintiff alleged in his complaint that unsanitary conditions at CCC caused him to contract cellulitis on his feet.  He specifically blamed the "filthy showers" for his medical problem.  Plaintiff alleged that, after making numerous complaints, he was taken to LSU Health Hospital, diagnosed with cellulitis, and prescribed multiple drugs.

Capt. Shron Johnson certifies medical records from Plaintiff's relevant time at CCC.  They show that on September 2, 2023 Plaintiff was taken to LSU-Shreveport Hospital where he was diagnosed with cellulitis of the left foot.  Plaintiff was prescribed Bactrim and fluconazole and given instructions to see Dr. Jean Rousseau, Plaintiff's primary care physician, for wound re-check in seven days.  Plaintiff was given instructions such as to wash his feet daily with soap and water, keep his feet dry, and wear a new pair of socks every day.  The discharge instructions also stated that the wound should be evaluated by the jail physician in 24 hours.

Plaintiff later filed a grievance and claimed that he had a "follow up at LSU hospital" and would like to make his appointment.  Medical staff responded that Plaintiff was to have a follow-up with Dr. Nelson (CCC's physician) on September 12, 2023 to check on the progress of his condition, but Plaintiff refused to see the physician.  Plaintiff

took issue with this and complained that the physician at LSU told him that he was to come back there for a follow-up appointment.

Medical Director Kelli Hayes responded in writing to Plaintiff's complaint and explained that Plaintiff did not have a follow-up appointment with LSU. Rather, his discharge instructions included a follow up with his primary care provider, Dr. Rousseau, but CCC does not send inmates to outside private physicians. Plaintiff was therefore placed on the list to see Dr. Nelson for the follow-up, which Plaintiff refused. Hayes added that Dr. Nelson facilitates any primary care appointments made for LSU Shreveport.

To succeed on a claim of failure to provide medical care, a pretrial detainee must establish that law enforcement responded to the detainee's serious medical needs with deliberate indifference. Williams v. City of Yazoo, 41 F.4th 416, 423 (5th Cir. 2022). To prove deliberate indifference, the detainee must show that a defendant "knew that he faced a substantial risk of serious harm and failed to take reasonable measures to abate that risk." Id. The knowledge inquiry is subjective, and the reasonableness question is objective. Id. "Deliberate indifference is an extremely high standard to meet." Domino v. Tex. Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). The plaintiff must show that jail officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Stapleton v. Lozano, 125 F.4th 743, 749 (5th Cir. 2025).

Plaintiff's own medical records, which are uncontested by any competing summary judgment evidence, show he was provided reasonable care for his cellulitis. He was taken to an outside hospital and physician, provided prescribed medications, and offered follow-

up care. Plaintiff complained about which physician provided his follow-up care, but not seeing the physician of an inmate's choice does not amount to deliberate indifference. "A prisoner has a constitutional right to adequate medical care, but not to a physician of his choice." Poe v. Fuller, 2019 WL 1440319, *6 (W.D. La. 2019) (Foote, J.), citing Parker v. Smith, 22 F.3d 1094 (5th Cir. 1994) (unpublished table decision). And disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a constitutional claim for indifference to medical needs. Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997). There is no indication from the summary judgment record that any named defendant acted with deliberate indifference to Plaintiff's serious medical need, so the movants are also entitled to summary judgment on this claim.

**State Law Claims; Parish of Caddo**

Plaintiff's complaint asserted federal constitutional claims against the deputies and invoked the supplemental jurisdiction of the court over any state law claims that may arise from the alleged facts. Doc. 1, ¶ 24. The movants' motion makes a summary assertion that the analysis of any state law claims "mirrors the analysis under federal law" but cites no authority for that proposition or otherwise analyzes any state law claims.

Plaintiff's complaint also asserted under the heading "State Law Claims" a claim that the Caddo Parish Commission violated its state statutory duty to properly fund CCC and that the governing body "negligently failed to adequately provide proper funding for purchasing of cleaning supplies to prevent the spread of diseases such as cellulitis." Doc. 1, p. 8. The Parish of Caddo (which states that it is the proper party defendant for the Caddo Parish Commission or Caddo Parish Police Jury) has filed an answer (Doc. 10) but

has not filed a motion for summary judgment. The complaint does not assert a federal claim against the Parish of Caddo.

There is no indication in the complaint that there is a basis for the exercise of diversity jurisdiction. The only grounds for this court to exercise jurisdiction over the state law claims against the deputies and the Parish of Caddo is supplemental jurisdiction pursuant to 28 U. S. C. § 1367. That supplemental jurisdiction depends upon the presence of the federal claims over which the court has original jurisdiction. Once the federal claims are dismissed, Section 1367(c)(3) provides that the court may decline to exercise supplemental jurisdiction over any remaining state law claims.

The Fifth Circuit has stated that the general rule is that state law claims should be dismissed once the federal claims have been dismissed. Parker & Parsley Petroleum Co. v. Dresser Indus., 972 F.2d 580, 585 (5th Cir. 1992); Engstrom v. First National Bank of Eagle Lake, 47 F.3d 1459, 1465 (5th Cir. 1995). The best exercise of the court's discretion in these circumstances is to dismiss without prejudice all state law claims against all defendants, which will result in the resolution of all claims in this civil action. Plaintiff, if he acts within the time allowed by 28 U.S.C. § 1367(d), would be free to litigate his state law claims in a state court.

Accordingly,

It is recommended that the Motion for Summary Judgment (Doc. 17) be granted by (1) dismissing with prejudice all federal claims against Jonathan Clark, Leroy Turner, and Shonderricka Jackson and (2) declining to exercise supplemental jurisdiction over and dismissing without prejudice all state law claims against Jonathan Clark, Leroy Turner,

and Shonderricka Jackson. It is further recommended that the court decline to exercise supplemental jurisdiction over the state law claims asserted against the Parish of Caddo and dismiss all claims against the Parish of Caddo (also referred to as the Caddo Parish Commission or Caddo Parish Police Jury) without prejudice.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 28th day of April, 2025.

Mark L. Hornsby
U.S. Magistrate Judge